## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

LEAF RIVER CELLULOSE, LLC                                        PLAINTIFF

v.                                        CIVIL ACTION NO. 2:11-CV-54-KS-MTP

MID-CONTINENT CASUALTY COMPANY                                        DEFENDANT

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court 1) **denies** the Motion for Partial Summary Judgment [42] filed by Jackson & Jackson Industrial Contractors, Inc. as to its duty to defend, protect, indemnify, and hold Leaf River Cellulose, LLC harmless with respect to the *Calhoun* case; and 2) **grants** the Motion for Partial Summary Judgment [72] filed by Leaf River Cellulose, LLC with respect to Jackson & Jackson Industrial Contractors, Inc.'s liability for failing to defend, protect, indemnify, and hold Leaf River Cellulose, LLC harmless with respect to the *Calhoun* case.

### I. BACKGROUND

In June 2007, Leaf River Cellulose, LLC ("Leaf River") entered into a Master Agreement with Jackson & Jackson Industrial Contractors, Inc. ("Jackson & Jackson") which addressed certain work to be performed by Jackson & Jackson at Leaf River's pulp mill in New Augusta, Mississippi. The Agreement contained an indemnification provision, and a provision whereby Jackson & Jackson agreed to maintain liability insurance that would protect Leaf River from any damages arising from the operations under the agreement.

Mid-Continent Casualty Company ("Mid-Continent") issued commercial and general liability policy number 04-GL-000685730 ("the Policy") to Jackson & Jackson, effective from August 21, 2007, to August 21, 2008. The Policy included an endorsement which named Leaf River as an additional insured under certain terms and conditions.

Buddie Calhoun was an employee of Jackson & Jackson working at Leaf River's pulp mill pursuant to the Master Agreement. He operated an overhead crane, removing paper rolls from a dryer machine. On or around April 15, 2008, Calhoun tripped and fell at the Leaf River pulp mill, injuring himself. On April 9, 2010, he filed a complaint in the Circuit Court of Perry County, Mississippi, alleging that he had slipped on a metal tube on the floor. Calhoun further alleged that Leaf River's negligence caused his injury, and he demanded a variety of damages.

Leaf River removed Calhoun's lawsuit to this Court on May 14, 2010. On September 14, 2010, Leaf River filed a third-party complaint against Jackson & Jackson for breach of the Master Agreement's indemnification and insurance provisions.

On March 8, 2011, Leaf River filed the present action [1] against Mid-Continent, alleging that Mid-Continent breached the Policy by refusing to provide a copy of it, refusing to defend Leaf River in the *Calhoun* case, and refusing to indemnify Leaf River in the event of an adverse judgment. Leaf River seeks indemnification for any liability incurred in the *Calhoun* case, in addition to the fees and litigation expenses incurred in that case.

On June 24, 2011, Jackson & Jackson intervened [12] in the present action, asserting that Mid-Continent had breached the Policy by refusing to defend Jackson & Jackson and Leaf River in the *Calhoun* case. Jackson & Jackson seeks a declaratory judgment with respect to Mid-Continent's duties under the Policy and monetary damages.

On June 28, 2011, Leaf River filed a motion in the *Calhoun* case to dismiss without prejudice its third-party complaint as to Jackson & Jackson. Leaf River believed that its claims against Jackson & Jackson were more appropriately litigated in the present case, and Jackson & Jackson had no objection to the dismissal. The Court granted the motion on June 30, 2011, and dismissed Leaf River's third-party complaint as to Jackson & Jackson without prejudice.

On July 22, 2011, Mid-Continent filed a Counterclaim/Third-Party Complaint [19, 20] in the present matter. Therein, Mid-Continent sought a declaratory judgment with respect to its obligations under the Policy with respect to the *Calhoun* case and the present case. Mid-Continent asserts that it has no defense, indemnity, or coverage obligations to Leaf River, Jackson and Jackson, or Buddie Calhoun with respect to the *Calhoun* case or the present case.

On September 15, 2011, Leaf River filed a Cross-Claim [27] against Jackson & Jackson, alleging that Jackson & Jackson breached the indemnification and insurance provisions of the Master Agreement with respect to the *Calhoun* case. Leaf River seeks indemnification for any liability or expenses incurred in the *Calhoun* case and the present case.

On November 23, 2011, the Court entered a Memorandum Opinion and Order in the *Calhoun* case granting Leaf River's Motion for Summary Judgment as to the claims of Buddie Calhoun. *Calhoun v. Leaf River Cellulose, LLC*, No. 2:10-CV-118-KS-MTP, 2011 U.S. Dist. LEXIS 135722 (S.D. Miss. Nov. 23, 2011). Therein, the Court held that Calhoun had not presented any evidence that Leaf River caused the hazard which purportedly caused his injury. *Id.* at *5. The Court further held that Calhoun had not presented sufficient evidence to create a genuine dispute of material fact as to whether Leaf River knew or should have known about the hazard. *Id.* at *10-*11. Accordingly, the Court granted Leaf River's Motion for Summary Judgment and entered a Final Judgment in its favor.

On December 13, 2011, Jackson & Jackson filed a Motion for Partial Summary Judgment [40] as to Mid-Continent's duty to defend it with respect to the breach of contract claims made by Leaf River arising from the Master Agreement. Therein, Jackson & Jackson argues that Mid-Continent is obligated to pay its attorney fees incurred in defending against Leaf River's indemnity claims.

On the same day, Jackson & Jackson also filed a Motion for Partial Summary Judgment [42] as to its own duty to defend Leaf River in the *Calhoun* case. Therein, Jackson & Jackson argues that it owes no duty to defend Leaf River because Calhoun's allegations pertain to Leaf River's own negligence.

On January 23, 2012, Mid-Continent filed a Cross-Motion for Partial Summary Judgment [62] as to its duty to defend Jackson & Jackson with respect to Leaf River's claims. Therein, Mid-Continent argues that the Policy does not provide Jackson &

Jackson with coverage against Leaf River's claims.

On February 9, 2012, Leaf River filed its own Motion for Partial Summary Judgment [72]. Therein, Leaf River argues that there are no genuine issues of material fact as to its own cross-claim against Jackson & Jackson for breach of the Master Agreement and indemnification and defense in the *Calhoun* case.

Finally, on March 23, 2012, Jackson & Jackson filed a Motion for Partial Summary Judgment [87] as to Mid-Continent's duty to defend Leaf River in the *Calhoun* case. Therein, Jackson & Jackson argues that there are no genuine issues of material fact as to Mid-Continent's failure to comply with its obligations under the Policy. Specifically, Jackson & Jackson contends that Mid-Continent had an obligation to defend Leaf River in the *Calhoun* case.

After months of briefing, the dispositive motions pertaining to Jackson & Jackson's obligations pursuant to the Master Agreement [42, 72] are ripe for review. Having considered the parties' briefs and the applicable law, the Court is prepared to address them. However, the Court will not address any motion pertaining to Mid-Continent's obligations under the Policy in this opinion.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must

merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. JACKSON & JACKSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT [42]

The Master Agreement between Jackson & Jackson and Leaf River included the following provision:[1]

    7.    Indemnification.

---

[1]The text of the indemnification provision was in all-capitalized letters, but that typographical choice is irrelevant to the issues presented in this case. In the interests of readability, the Court will exercise its discretion with respect to the capitalization of letters in the text quoted below.

a.	To the fullest extent permitted by law, Contractor shall defend, protect, indemnify and hold harmless Owner . . . (collectively referred to for purposes of this Article 7 as "Indemnitees") from and against all claims, liabilities, losses, damages, demands, lawsuits, causes of action, strict liability claims, penalties, fines administrative law actions and orders, expenses (including, but not limited to, attorneys' fees) and costs of every kind and character (collectively "claims/liabilities") arising out of or incident to any of the work performed or provided by Contractor, its subcontractors, or the employees of either, regardless of whether the harm is to Contractor, Indemnitees, or any other person or entity. The duty to defend, protect, indemnify and save Indemnitees harmless referred to in the preceding sentence shall not include claims/liabilities to the extent resulting from the negligence of any Indemnitee.

b.	To the extent of Contractor's duty to defend, protect, indemnify and hold harmless Indemnitees under this Article 7, Contractor expressly waives any insulation from liability or immunity from suit as to any claim by Indemnitees under this Article 7 for claims/liabilities in respect of injuries to Contractor's employees that may otherwise extend to Contractor as a result of any payments made by or on behalf of Contractor to any such Employees under any applicable workers' compensation statute or similar law or judicial decision.

c.	Contractor shall maintain at its own cost and expense insurance covering the indemnity provisions of this agreement. Contractor's duties under this Article 7 shall survive any termination, revocation, or expiration of this Agreement.

The term "Contractor" refers to Jackson & Jackson, and the term "Owner" refers to Leaf River.

In its Cross-Claim, Leaf River alleges that Jackson & Jackson breached the Master Agreement by failing to comply with the indemnification provision. Specifically, Leaf River claims that Jackson & Jackson has refused to pay attorney's fees, expert

fees, litigation and investigation costs, and any other defense costs relating to the *Calhoun* case and the present case. Leaf River also claims that Jackson & Jackson failed to provide insurance coverage as required by the Agreement, that it failed to provide a Certificate of Insurance as required, and that it failed to comply with the Agreement's waiver of subrogation provisions.

In its Motion for Partial Summary Judgment [42], Jackson & Jackson argues that it owed no duty to defend Leaf River in the *Calhoun* case. Specifically, Jackson & Jackson contends that the Master Agreement does not require it to indemnify or defend Leaf River for any claims resulting from Leaf River's own negligence. Accordingly, Jackson & Jackson requests that the Court dismiss Leaf River's breach of contract claim to the extent it pertains to the payment of Leaf River's defense costs in the *Calhoun* case.

## A.    *Choice of Law*

Before the Court addresses the Master Agreement's indemnification provision, it must determine which state's law governs its interpretation. "A federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). Generally, Mississippi courts "will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Williamson Pounders Architects PC v. Tunica Cnty., Miss.*, 597 F.3d 292, 295 (5th Cir. 2010). "This general principle is respected in the absence of anything violating the public policy of the forum

jurisdiction." *Id.* (punctuation omitted).

The Master Agreement provides: "This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted in accordance with the laws of the state of Delaware, notwithstanding and without reference to choice of law, conflicts of law, or other principles." Accordingly, Jackson & Jackson and Mid-Continent[2] argue that Delaware law governs the interpretation and enforcement of the Master Agreement. Leaf River cites extensively to Mississippi law, but it did not make an explicit choice-of-law argument. No party has argued that application of Delaware law would violate the public policy of Mississippi. Accordingly, the Court will apply Delaware law in interpreting and applying the Master Agreement. *Id.*

**B.      *Interpretation and Application of the Master Agreement***

The Supreme Court of Delaware has provided the following summary of Delaware's law of contract interpretation:

> Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. We will not read a contract to render a provision or term meaningless or illusory. A contract must contain all material terms in order to be enforceable, and specific performance will only be granted when an agreement is clear and definite and a court does not need to supply essential contract terms.

> When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions. On the

---

[2]Mid-Continent submitted its own briefing on the issue of whether Jackson & Jackson has a duty to defend and/or indemnify Leaf River, as it believes that the Court's resolution of the issue may have bearing on its interests.

contrary, when we may reasonably ascribe multiple and different interpretations to a contract, we will find that the contract is ambiguous. An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract.

If a contract is ambiguous, we will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party. The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous. The determination of ambiguity lies within the sole province of the court.

*Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010). The Court's primary goal is to give effect to the party's intentions. *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005). "The intent of the parties is ascertained from the language of the contract in its context." *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 655 A.2d 307, 1995 Del. LEXIS 25, at *6 (Del. 1995).

Jackson & Jackson agreed to "defend, protect, indemnify and hold harmless" Leaf River "from and against all claims, liabilities, losses, damages, demands, lawsuits, causes of action, strict liability claims, penalties, fines, administrative law actions and orders, expenses (including, but not limited to, attorneys' fees) and costs of every kind and character (collectively, 'claims/liabilities') arising out of or incident to any of the work performed or provided" by Jackson & Jackson pursuant to the Master Agreement, except to the extent that such "claims/liabilities" result from Leaf River's negligence.

In the Court's opinion, determining Jackson & Jackson's obligations under the indemnification provision is a relatively simple task. The terms of the provision are clear and unambiguous, and a plain reading of them is sufficient to answer the question. Buddie Calhoun was a Jackson & Jackson employee, and his injury occurred

while he was performing his duties pursuant to the Master Agreement. *Calhoun*, 2011 U.S. Dist. LEXIS 135722 at \*1-\*2. Therefore, his claims arose from or were incident to the work provided by Jackson & Jackson under the Master Agreement. This Court held that there was no evidence that Leaf River's negligence caused Buddie Calhoun's injuries, and it entered a final judgment in Leaf River's favor as to those claims. *Id.* at \*12. Therefore, Buddie Calhoun's claims against Leaf River did not result from Leaf River's negligence, and Jackson & Jackson must defend, protect, indemnify, and hold Leaf River harmless from and against those claims.

In the Court's opinion, there is no other reasonable conclusion. The terms of the indemnification provision are clear, and there is no genuine dispute of material fact as to Leaf River's lack of negligence. Of course, Leaf River and Mid-Continent disagree with this conclusion. The Court will briefly address their arguments.

## C.     *Do Claims "Result From" an Indemnitee's Actual or Alleged Actions?*

Both Jackson & Jackson and Mid-Continent argue that Jackson & Jackson's duty to defend and indemnify Leaf River should be determined by reference to the allegations of Buddie Calhoun's complaint, rather than the Court's ultimate findings regarding those allegations. This argument echoes Delaware law with respect to the duty to defend under a liability insurance policy. In that context, "[t]he test is whether the underlying complaint, read as a whole, alleges a risk within the coverage of the policy." *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 73 (Del. 2011). However, neither Jackson & Jackson nor Mid-Continent have presented the Court with any Delaware law holding that this rule applies to the application of indemnification

provisions in other contracts, and the Supreme Court of Delaware has, in fact, endorsed the contrary view: that the obligation to indemnify should be determined by reference to the actual facts as determined at trial or in discovery.

1.    *Pike Creek Chiropractic Center v. Robinson*

In *Pike Creek Chiropractic Center v. Robinson*, 637 A.2d 418, 419 (Del. 1994), Pike Creek Chiropractic Center ("Pike Creek") operated a medical facility. David Robinson was employed there as a physician. *Id.* Brenda Evans sought treatment at Pike Creek, and Robinson treated her. *Id.* Evans later filed a suit against both Pike Creek and Robinson, alleging that the negligence of both Robinson and Pike Creek had caused her to suffer certain injuries during her treatment. *Id.*

Pike Creek employed Robinson pursuant to an employment contract which contained the following indemnification provision: "The Employee shall hold the Employer harmless and indemnify the Employer . . . against any liabilities and expenses, including attorney's fees which result from any acts and admissions of the Employee." *Id.* at 419-20. Accordingly, Pike Creek requested that Robinson and his insurer indemnify with respect to the Evans litigation. *Id.* at 420. Robinson refused, and Pike Creek defended itself. *Id.*

During litigation, Evans stipulated that her only claim against Pike Creek was that it was vicariously liable for Robinson's alleged negligence. *Id.* After this stipulation, Robinson agreed to defend Pike Creek, but not to indemnify it for the legal expenses it had already expended. *Id.* Pike Creek then filed a declaratory judgment action to require Robinson to reimburse it for all of its fees and expenses in defending

12

itself. *Id.* The lower court held that Robinson had no duty to indemnify Pike Creek for the legal fees it initially expended because Robinson's duty to defend did not arise until the stipulation narrowed the claims against Pike Creek to one of vicarious liability for Robinson's actions. *Id.* On appeal, Pike Creek argued that its right to indemnification should be judged by the actual facts of liability, rather than the allegations of the complaint. *Id.*

The Delaware Supreme Court decided to "look to the actual facts developed during litigation, not the allegations of the plaintiff's complaint." *Id.* at 421. The Court explained: "[I]t does not require any legal ingenuity to draft a complaint charging someone with negligence, and no evidence is needed to support such an allegation. The right to indemnification for litigation expenses should not depend on the pleading choice of a third party, who through an excess of caution or optimism may allege far more than he can prove at trial." *Id.* This approach "is supported by logic and fairness. The indemnitee's actual wrongdoing or lack thereof, not a third-party plaintiff's allegations, should be determinative. Where the indemnitee is free from actual wrongdoing, it should not be divested of its legal right to indemnification due to the unsubstantiated pleading choices of a third party." *Id.* Therefore, a "court construing an indemnification agreement should look to the actual facts developed during discovery, or at trial, to determine if the indemnitee is free from actual wrongdoing and therefore entitled to complete indemnification." *Id.*

Both Jackson & Jackson and Mid-Continent argue that *Pike Creek* is inapplicable to the present case. First, Jackson & Jackson argues that the Court should

ignore *Pike Creek* because the indemnity provision in that case does not explicitly include a duty to "defend." Rather, the *Pike Creek* provision includes a promise to "hold . . . harmless" and "indemnify." *Id.* at 419-20. For all practical purposes, the *Pike Creek* contract's failure to include a duty to "defend" is irrelevant. Regardless of whether Robinson had a duty to provide a defense for Pike Creek in the Evans litigation, he had a duty to indemnify it for its expenses in defending itself in the Evans litigation. *Id.* at 422. In the present case, Leaf River seeks indemnification for the expenses and costs of defending itself in the *Calhoun* case. The *Pike Creek* contract's lack of the word "defend" does not lessen its usefulness in determining whether Delaware courts look a third-party plaintiff's allegations or the actual events giving rise to a case to determine whether an indemnitor is obligated to cover an indemnitee's attorney's fees and expenses in defending itself.

Next, Jackson & Jackson argues that *Pike Creek* is distinguishable because Evans, the third-party plaintiff, asserted negligence claims against both Robinson, the indemnitor, and Pike Creek, the indemnitee. In contrast, Buddie Calhoun did not make any allegations against Jackson & Jackson, his employer. However, the Delaware Supreme Court's *Pike Creek* decision was not premised on the mere inequity of allowing Robinson — the indemnitor, and alleged tortfeasor — to escape liability for Pike Creek's costs of defense. Rather, the decision was premised upon what the parties explicitly agreed in the contract:

> [T]he entire litigation stems from Robinson's treatment of Evans. But for his alleged negligence, PCCC would not have been named as a defendant and incurred any litigation expense. Since Robinson expressly agreed to

> indemnify PCCC for his acts or omissions, and PCCC's loss (litigation expenses) is a direct result of Robinson's alleged negligence, PCCC is entitled to its bargained-for indemnification. To hold otherwise would deprive PCCC of its contractual right to be held harmless and indemnified for Robinson's acts or omissions simply by virtue of the meritless pleading of a third party.

*Id.* Therefore, Robinson's negligence was relevant insofar as the contract explicitly provided that Pike Creek would only enjoy indemnification for liabilities and expenses stemming from Robinson's actions. *Id.* at 419-20.

In the present case, Jackson & Jackson did not agree to indemnify and defend Leaf River for only those claims and liabilities resulting from Jackson & Jackson's actions. Rather, Jackson & Jackson agreed to indemnify and defend Leaf River for all claims and liabilities arising out of or incident to the work done under the Master Agreement except those claims and liabilities resulting from Leaf River's own negligence. Therefore, Jackson & Jackson's exclusion from the *Calhoun* case is irrelevant.

In summary, *Pike Creek* is the most on-point case cited by the parties. Therein, the Supreme Court of Delaware held that an "indemnitee's actual wrongdoing or lack thereof, not a third-party plaintiff's allegations, should be determinative" of the indemnitor's obligations under the indemnification contract. *Id.* at 421. "Where the indemnitee is free from actual wrongdoing, it should not be divested of its legal right to indemnification due to the unsubstantiated pleading choices of a third party," and a "court construing an indemnification agreement should look to the actual facts developed during discovery, or at trial, to determine if the indemnitee is free from

actual wrongdoing and therefore entitled to complete indemnification." *Id.* at 421. Accordingly, the Court rejects Jackson & Jackson and Mid-Continent's argument that the Court should determine the indemnification provision's applicability solely by reference to the allegations of Buddie Calhoun's complaint.[3]

### 2. The Language of the Indemnification Provision

Jackson & Jackson and Mid-Continent also argue that the language of the indemnification provision itself supports their argument that the allegations of the *Calhoun* complaint, rather the Court's adjudications of fact, determine whether Jackson & Jackson has an obligation to indemnify Leaf River for its costs in defending itself against Calhoun's claims. Both Jackson & Jackson and Mid-Continent focus on the term "claims/liabilities" in the following sentence: "The duty to defend, protect, indemnify and save indemnitees harmless referred to in the preceding sentence shall not include claims/liabilities to the extent resulting from the negligence of any indemnitee."

Jackson & Jackson argues: "For a 'claim' to result from negligence, it must be interpreted as resulting from an allegation of negligence because a 'claim' cannot result from the actual negligence of a party." Likewise, Mid-Continent argues: "[T]here is a direct, affirmative negation of a duty to defend and indemnify, and that affirmative

---

[3]Jackson & Jackson also cites *Hollingsworth v. Chrysler Corp.*, 208 A.2d 61 (Del. Super. Ct. 1965), in support of this argument. However, *Hollingsworth* is a decision by a Delaware trial court, whereas *Pike Creek* is a decision by Delaware's court of last resort. To whatever extent *Hollingsworth* conflicts with *Pike Creek*, the Court must apply *Pike Creek*.

16

negation is extended to those situations in which Leaf River presents Jackson & Jackson with claims that are based, either in whole or in part, on the negligence of Leaf River and its employees." Indeed, Mid-Continent goes so far as to argue that the limiting sentence "does not even require the sole negligence of Leaf River, much less some determination that the plaintiff's damages were caused by Leaf River's sole negligence."

In short, this argument is absurd. The term "claims/liabilities" collectively refers to "all claims, liabilities, losses, damages, demands, lawsuits, causes of action, strict liability claims, penalties, fines administrative law actions and orders, expenses (including, but not limited to, attorneys' fees) and costs of every kind and character." The term "claims/liabilities" is merely a shorthand for a longer list of terms. It carries no hidden or implied limitations on the applicability of the indemnification provision. The only limitation it implies is the obvious one: that the indemnification provision only applies to the items in the list collectively referred to as "claims/liabilities." Delaware law requires that the Court "give effect to the plain-meaning of the contract's terms and provisions." *Osborn*, 991 A.2d at 1159-60. The interpretation advanced by Jackson & Jackson and Mid-Continent "produces an absurd result or one that no reasonable person would have accepted when entering the contract." *Id.* at 1160. Therefore, the Court declines to accept it.

## D. *The Effect of Delaware Code Title 6, Section 2704*

Jackson & Jackson also argues that the indemnification provision is void and unenforceable under Delaware law. Delaware Code Title 6, Section 2704 provides:

A covenant, promise, agreement or understanding in connection with or collateral to, a contract or agreement . . . relative to the construction, alteration, repair or maintenance in the State of a road, highway, driveway, street, bridge or entrance or walkway of any type constructed thereon in the State, and building, structure, appurtenance or appliance in the State . . . purporting to indemnify or hold harmless the promisee or indemnitee or others . . . for damages arising from liability for bodily injury or death to persons or damage to property caused partially or solely by, or resulting partially or solely from, or arising partially or solely out of the negligence of such promisee or indemnitee or others than the promisor or indemnitor . . . is against public policy and is void and unenforceable, even where such covenant, promise, agreement or understanding is crystal clear and unambiguous in obligating the promisor or indemnitor to indemnify or hold harmless the promisee or indemnitee from liability resulting from such promisee's or indemnitee's own negligence.

DEL. CODE ANN. tit. 6, § 2704(a) (2011). In summary, "a contractual provision requiring one party to indemnify another party for the second party's own negligence, whether sole or partial, is against public policy and is void and unenforceable." *J. S. Alberici Constr. Co. v. Mid-West Conveyor Co.*, 750 A.2d 518, 521 (Del. 2000).

The indemnification provision at issue does not require Jackson & Jackson to indemnify Leaf River for Leaf River's own negligence. In fact, the provision explicitly provides that it does not apply to any claims/liabilities to the extent they result from Leaf River's own negligence. In any case, this Court already determined that the claims/liabilities for which Leaf River seeks indemnification did not result from its own negligence. *See Calhoun*, 2011 U.S. Dist. LEXIS 135722 at *12. Therefore, Delaware Code Title 6, Section 2704(a) has no bearing on this case.[4]

---

[4]Section 2704(a) also forbids indemnification provisions which indemnify an indemnitee for damages arising partially or solely from the negligence of "other than the promisor or indemnitor." DEL. CODE ANN. tit. 6, § 2704(a) (2011). No party

### E.    Conclusion

For all of the reasons stated above, the Court denies Jackson & Jackson Industrial Contractors, Inc.'s Motion for Partial Summary Judgment [42] as to its duty to defend Leaf River in the *Calhoun* case. The terms of the indemnification provision are clear. Jackson & Jackson is obligated to defend and indemnify Leaf River with respect to claims/liabilities arising out of the work done pursuant to the Master Agreement to the extent such claims/liabilities are not the result of Leaf River's negligence. Buddie Calhoun's claims arise from work done pursuant to the Master Agreement, and they were not the result of Leaf River's negligence. Accordingly, Jackson & Jackson is responsible for paying the expenses, attorney's fees, and costs which Leaf River incurred in defending itself against those claims.

### IV. LEAF RIVER'S MOTION FOR PARTIAL SUMMARY JUDGMENT [72]

Leaf River filed a Motion for Partial Summary Judgment [72] as to its breach of contract claim stemming from Jackson & Jackson's failure to defend and indemnify it in the *Calhoun* case.[5] Under Delaware law, the elements of a breach of contract claim are: "the existence of a contract, the breach of an obligation imposed by that contract, and resulting damages to the plaintiff." *Gutridge v. Iffland*, 889 A.2d 283, 2005 Del. LEXIS 518, at *113 n. 11 (Del. 2005). Leaf River only seeks summary judgment as to

---

has explored this issue. Therefore, the Court will not do so here.

[5]Leaf River also asserted a breach of contract claim stemming from Jackson & Jackson's alleged failure to provide liability insurance as required by the terms of the Master Agreement, but its Motion for Partial Summary Judgment [72] does not address that claim.

Jackson & Jackson's liability for failing to defend and indemnify it in the *Calhoun* case.

For all practical purposes, the Court determined the outcome of Leaf River's motion when it addressed Jackson & Jackson's motion. It is undisputed that a contract existed between Leaf River and Jackson & Jackson. As the Court ruled above, Jackson & Jackson has an obligation to defend, protect, indemnify and hold Leaf River harmless for the expenses, attorney's fees, and costs which Leaf River incurred in defending itself against Buddie Calhoun's claims. It is also undisputed that Jackson & Jackson has not defended, protected, indemnified or held Leaf River harmless for those defense costs.[6] Therefore, the only issue that remains to be determined is the amount of Leaf River's damages, if any.

The Court grants Leaf River's Motion for Partial Summary Judgment [72] with respect to Jackson & Jackson's liability under the indemnification provision of the Master Agreement.

## V. CONCLUSION

For the reasons stated above, the Court 1) **denies** the Motion for Partial Summary Judgment [42] filed by Jackson & Jackson Industrial Contractors, Inc. as to its duty to defend, protect, indemnify, and hold Leaf River Cellulose, LLC harmless

---

[6]Jackson & Jackson argues that Leaf River failed to prove a breach of the Master Agreement insofar as it failed to provide evidence that it forwarded any invoices for payment. On rebuttal, Leaf River provided evidence that it demanded indemnification and defense from Jackson & Jackson on April 30, 2010, and again on November 25, 2011, immediately after the Court entered a final judgment in Leaf River's favor as to Calhoun's claims. Regardless of this evidence, Jackson & Jackson's own pleadings in this case are sufficient to demonstrate that it has not fulfilled its obligations under the Master Agreement.

with respect to the *Calhoun* case; and 2) **grants** the Motion for Partial Summary Judgment [72] filed by Leaf River Cellulose, LLC with respect to Jackson & Jackson Industrial Contractors, Inc.'s liability for failing to defend, protect, indemnify, and hold Leaf River Cellulose, LLC harmless with respect to the *Calhoun* case

SO ORDERED AND ADJUDGED this 27th day of March, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE