IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


LEAF RIVER CELLULOSE, LLC                                    PLAINTIFF

v.                                    CIVIL ACTION NO. 2:11-CV-54-KS-MTP

MID-CONTINENT CASUALTY COMPANY                        DEFENDANT


MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court finds that Mid-Continent Casualty

Company – pursuant to a commercial and general liability policy issued to Jackson &

Jackson Industrial Contractors – has a duty to defend and to indemnify Jackson &

Jackson against the claims of Leaf River Cellulose, LLC. The Court also finds that the

policy requires Mid-Continent to defend and indemnify Leaf River against the claims

of Buddie Calhoun. Consequently:

- The Court **grants** the Motion for Partial Summary Judgment [40]
  filed by Jackson & Jackson as to Mid-Continent's duty to defend it
  against Leaf River's claims.

- The Court **denies** the Cross-Motion for Partial Summary
  Judgment [62] filed by Mid-Continent as to Jackson & Jackson's
  claims against it.

- The Court **grants** the Motion for Partial Summary Judgment [109]
  filed by Jackson & Jackson as to Mid-Continent's duty to
  indemnify it for the damages awarded to Leaf River in this matter.

- The Court **grants** the Motion for Partial Summary Judgment [87]
  filed by Jackson & Jackson as to Mid-Continent's duty to defend
  Leaf River in the *Calhoun* case.

- The Court **denies** the Cross-Motion for Partial Summary
  Judgment [107] filed by Mid-Continent as to its duty to defend

Leaf River in the *Calhoun* case.

- The Court **denies** the Motion for Partial Summary Judgment [108] filed by Mid-Continent as to Leaf River's claims against it.

## I. BACKGROUND

In June 2007, Leaf River and Jackson & Jackson entered into a Master Agreement addressing work to be performed by Jackson & Jackson at Leaf River's pulp mill in New Augusta, Mississippi. The Master Agreement contained an indemnification provision and a provision in which Jackson & Jackson agreed to maintain liability insurance that would protect Leaf River from any damages arising from work done under the agreement. Mid-Continent issued a commercial and general liability policy to Jackson & Jackson, and the policy included an endorsement which named Leaf River as an additional insured under certain conditions.

Buddie Calhoun, an employee of Jackson & Jackson, worked at Leaf River's pulp mill pursuant to the Master Agreement. On or around April 15, 2008, he tripped over a metal pipe, injuring himself. On April 9, 2010, he filed a complaint in the Circuit Court of Perry County, Mississippi, alleging that Leaf River's negligence caused his injury and demanding a variety of damages. Leaf River removed Calhoun's lawsuit to this Court. On September 14, 2010, it filed a third-party complaint against Jackson & Jackson for breach of the Master Agreement's indemnification and insurance provisions.

On March 8, 2011, Leaf River filed the present action [1] against Mid-Continent, alleging that Mid-Continent breached the policy by refusing to provide a copy of it,

refusing to defend Leaf River in the *Calhoun* case, and refusing to indemnify Leaf River in the event of a judgment in Calhoun's favor. Jackson & Jackson later intervened [12], asserting that Mid-Continent had breached the policy by refusing to defend Jackson & Jackson and Leaf River in the *Calhoun* case. Mid-Continent filed a Counterclaim/Third-Party Complaint [19, 20], seeking a declaratory judgment with respect to its obligations under the Policy with respect to both the *Calhoun* case and this case. Mid-Continent asserts that it has no defense, indemnity, or coverage obligations to Leaf River, Mid-Continent, or Buddie Calhoun.

In the *Calhoun* case, Leaf River filed a motion to dismiss without prejudice its third-party complaint as to Jackson & Jackson, believing that its claims against Jackson & Jackson were more appropriately litigated in the present case. The Court granted the motion and dismissed Leaf River's third-party complaint as to Jackson & Jackson without prejudice. Leaf River then filed a Cross-Claim [27] against Jackson & Jackson in the present case, alleging that it had breached the indemnification and insurance provisions of the Master Agreement. Leaf River seeks indemnification for any liability or expenses incurred in both cases.

On November 23, 2011, the Court entered a Memorandum Opinion and Order in the *Calhoun* case granting Leaf River's Motion for Summary Judgment as to the claims of Buddie Calhoun. *Calhoun v. Leaf River Cellulose, LLC*, No. 2:10-CV-118-KS-MTP, 2011 U.S. Dist. LEXIS 135722 (S.D. Miss. Nov. 23, 2011). The Court held that Calhoun had not presented any evidence that Leaf River caused the hazard which purportedly caused his injury. *Id.* at *5. The Court further held that Calhoun had not

3

presented sufficient evidence to create a genuine dispute of material fact as to whether Leaf River knew or should have known about the hazard. *Id.* at *10-*11. Accordingly, the Court granted Leaf River's Motion for Summary Judgment and entered a Final Judgment in its favor.

After all of the insurance coverage claims were consolidated in this case, the parties began filing dispositive motions:

- Jackson & Jackson filed a Motion for Partial Summary Judgment [40] as to Mid-Continent's duty to defend it against Leaf River's breach of contract claims.

- Jackson & Jackson also filed a Motion for Partial Summary Judgment [42] as to its own duty to defend Leaf River in the *Calhoun* case.

- Mid-Continent filed a Cross-Motion for Partial Summary Judgment [62] as to its duty to defend Jackson & Jackson against Leaf River's claims.

- Leaf River filed its own Motion for Partial Summary Judgment [72] as to Jackson & Jackson's indemnification and defense obligations under the Master Agreement.

- Finally, Jackson & Jackson filed a Motion for Partial Summary Judgment [87] as to Mid-Continent's duty to defend Leaf River in the *Calhoun* case.

On March 27, 2012, the Court denied Jackson & Jackson's Motion for Partial Summary Judgment [42] as to its duty to defend and indemnify Leaf River in the *Calhoun* case, and the Court granted Leaf River's Motion for Partial Summary Judgment [72] on the same issues. *Leaf River Cellulose, LLC v. Mid-Continent Ca. Co.*, No. 2:11-CV-54-KS-MTP, 2012 U.S. Dist. LEXIS 41593 (S.D. Miss. Mar. 27, 2012). The Court held that Jackson & Jackson was obligated to defend and indemnify Leaf River

against Buddie Calhoun's claims, as those claims arose from work done pursuant to the Master Agreement and were not the result of Leaf River's own negligence. *Id*. at \*28.

The parties then filed more dispositive motions:

- Mid-Continent filed a Cross-Motion for Partial Summary Judgment [107] as to its duty to defend Leaf River in the *Calhoun* case.

- Mid-Continent filed a Motion for Partial Summary Judgment [108] as to Leaf River's claims against it.

- Finally, Jackson & Jackson filed a Motion for Partial Summary Judgment [109] as to Mid-Continent's duty to indemnify it for any damages awarded to Leaf River.

After months of briefing, the Court may finally address Mid-Continent's obligations under the policy. There are four issues the Court must address: 1) Mid-Continent's duty to defend Jackson & Jackson against the claims of Leaf River, 2) Mid-Continent's duty to indemnify Jackson & Jackson against the claims of Leaf River, 3) Mid-Continent's duty to defend Leaf River against the claims of Buddie Calhoun, and 4) Mid-Continent's duty to indemnify Leaf River against the claims of Buddie Calhoun.

## II. Standard of Review

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the

nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Before addressing the specific issues raised in the parties' motions, the Court must briefly discuss the relevant Mississippi law and policy terms.

### III. GENERAL PRINCIPLES OF MISSISSIPPI INSURANCE LAW

"A liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 719 (Miss. 2004). Accordingly, to determine whether an insurance company has a duty to defend its insured, the Court "must look

at the facts alleged in the complaint, together with the policy." *Auto. Ins. Co. v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). "These allegations, and particularly the conduct alleged in the complaint, determine whether an insurer is required to defend an action. No such duty arises when the alleged conduct falls outside the policy's coverage." *Id.* However, "an insurer has a duty to defend when presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy." *Mulberry Square Prods. v. State Farm Fire & Cas. Co.*, 101 F.3d 414, 422 (5th Cir. 1996).

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.* at 531. "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.*

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009).

In Mississippi, insurance policies are contracts, and as such, they are to

be enforced according to their provisions. When parties to a contract make mutual promises (barring some defense or condition which excuses performance), they are entitled to the benefit of their bargain. Thus, insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated.

* * *

[I]f a contract is clear and unambiguous, then it must be interpreted as written. . . . If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. Exclusions and limitations on coverage are also construed in favor of the insured. Language in exclusionary clauses must be clear and unmistakable, as those clauses are strictly interpreted.

*Id.* (punctuation omitted); *see also Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

## IV. THE POLICY'S TERMS

The section of the policy titled "**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**" provides, in pertinent part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The insurance "applies to 'bodily injury' or 'property damage' only if . . . the 'bodily injury' or 'property damage' is caused by an 'occurrence' . . . " during the policy period.

The "**Exclusions**" section of "**COVERAGE A**" provides that the insurance does not apply to "Contractual Liability" – "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." There is an exception to the contractual liability exclusion, though, for damages "[a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

The policy also contains several definitions which are relevant to this case. First, an "insured contract" is:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Second, "bodily injury" is "bodily injury, sickness or disease sustained by a person . . . ." For purposes of liability assumed in an "insured contract," the definition of "bodily injury" includes "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured" if the insured assumed liability for the third party's cost of defense in an "insured contract" and the costs are expended in defending an action "in which damages to which this insurance applies are alleged." Finally, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In summary, the policy requires Mid-Continent to pay sums that an insured

becomes obligated to pay because of bodily injury caused by an accident during the policy period, but the policy generally excludes damages which an insured is required to pay because of the assumption of liability in a contract. The contractual liability exclusion does not apply, though, to contracts in which Jackson & Jackson assumes the tort liability of another party for bodily injury to a third party caused by Jackson & Jackson's own negligence.

## V. MID-CONTINENT'S DUTY TO DEFEND JACKSON & JACKSON

The Court will first address Mid-Continent's duty to defend Jackson & Jackson against the claims of Leaf River, an issue primarily addressed in Jackson & Jackson's Motion for Partial Summary Judgment [40] and Mid-Continent's Cross-Motion for Partial Summary Judgment [62]. As demonstrated by the policy language quoted above, Mid-Continent agreed to defend Jackson & Jackson against any suit seeking damages for bodily injury to which the policy applies, and the policy generally applies to bodily injury caused by an occurrence. The policy specifically excludes bodily injury for which Jackson & Jackson is obligated to pay because of an indemnity agreement, but the exclusion does not apply to liability for damages assumed in an "insured contract," as defined by the policy.

Mid-Continent's duty to defend Jackson & Jackson against Leaf River's claims hinges, therefore, on three questions: 1) whether the contractual liability assumed by Jackson & Jackson in the Master Agreement is because of "bodily injury" or "property damage;" 2) whether the "bodily injury" or "property damage" at issue was caused by an "occurrence;" and 3) whether the indemnification provision of the Master Agreement

constitutes an "insured contract."

## A.    *Because of "Bodily Injury" or "Property Damage"*

Mid-Continent argues that it had no duty to defend Jackson & Jackson against the claims of Leaf River because Leaf River did not seek "damages because of 'bodily injury' or 'property damage.'" The argument has two facets. First, Mid-Continent contends that Leaf River seeks damages "because of" Jackson & Jackson's breach of the indemnification provision of the Master Agreement, rather than damages "because of" a "bodily injury." Second, Mid-Continent argues that its duty to defend Jackson & Jackson is determined solely by reference to the allegations of Leaf River's Third-Party Complaint[1] in the *Calhoun* case and Cross-Claim [27] in the present case, and neither pleading contains an allegation of "bodily injury" or "property damage."

With respect to the first argument, the operative policy language – "damages because of 'bodily injury' or 'property damage'" – is ambiguous enough to encompass both primary and secondary causes. Mid-Continent is correct that if Jackson & Jackson had fulfilled its obligations under the indemnification provision of the Master Agreement, Leaf River would not have filed claims against it. However, Leaf River's defense costs are ultimately attributable to Calhoun's alleged bodily injury. If Calhoun had never slipped on a metal pipe, he would not have made a premises liability claim against Leaf River. Conversely, Leaf River would have accrued defense costs regardless of whether Jackson & Jackson fulfilled its obligations under the Master Agreement.

_____

[1]*See* Third-Party Complaint, *Calhoun v. Leaf River Cellulose, LLC*, No. 2:10-CV-118-KS-MTP (S.D. Miss. Sept. 14, 2010), ECF No. 18.

As for the second argument, Mid-Continent accurately notes that neither Leaf River's Third-Party Complaint against Jackson & Jackson in the *Calhoun* case nor its Cross-Claim [27] against Jackson & Jackson in the present case include allegations of "bodily injury" or "property damage." Both pleadings, though, were filed within a larger context of which Mid-Continent is, at this point, well aware. While an insurer's duty to defend is generally determined by reference to the allegations levied against the insured, an insurer is not permitted to disregard independent facts of which it is made aware that may create potential coverage. *See Mulberry Square Prods.*, 101 F.3d at 422; *Merchants Co. v. Am. Motorists Ins. Co.*, 794 F. Supp. 611, 617 (S.D. Miss. 1992); *Mavar Shrimp & Oyster Co. v. United States. Fid. & Guar. Co.*, 187 So. 2d 871, 875 (Miss. 1966). The operative question, then, is when Mid-Continent became aware that Leaf River's demand of indemnification from Jackson & Jackson was the result of Calhoun's alleged slip-and-fall. If Mid-Continent had such extrinsic knowledge, Leaf River's failure to allege as much in the pleadings is irrelevant.

Mid-Continent obviously knew that Leaf River's claims against Jackson & Jackson in this case were "because of" Calhoun's bodily injury, as Leaf River asserted as much in its Complaint [1], which was served on Mid-Continent on March 21, 2011 [4], well before Leaf River filed its Cross-claim [27] against Jackson & Jackson. Accordingly, Mid-Continent knew from the start of this case that Leaf River's claims against Jackson & Jackson were "because of" Calhoun's alleged bodily injury.

It is not clear, though, when Mid-Continent became aware that Leaf River's third-party claims against Jackson & Jackson in the *Calhoun* case were "because of"

Calhoun's alleged bodily injury. Leaf River served Jackson & Jackson with its Third-Party Complaint in the *Calhoun* case on December 3, 2010.[2] The parties have not presented the Court with sufficient evidence to choose a specific date from which Mid-Continent had sufficient information to assess its coverage obligations in the *Calhoun* case, but it is clear that Mid-Continent had sufficient information by at least March 21, 2011, the date on which it was served with Leaf River's Complaint in the present case.

## B.    *Caused by an "Occurrence"*

Second, Mid-Continent argues that it had no duty to defend Jackson & Jackson against the claims of Leaf River because Leaf River did not seek damages "caused by an 'occurrence.'" This argument is basically identical to Mid-Continent's argument regarding "bodily injury" or "property damage." Mid-Continent contends that Leaf River seeks damages "because of" Jackson & Jackson's *intentional* breach of the indemnification provision of the Master Agreement, while the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

As stated above, the phrase "because of" is sufficiently vague to encompass both primary and secondary causes. While Jackson & Jackson's breach of the indemnification provision was intentional, Buddie Calhoun's slip-and-fall was an accident, and Mid-Continent has been aware for some time now that Leaf River's

---

[2] *See* Affidavit of Service for Third-Party Complaint, *Calhoun v. Leaf River Cellulose, LLC*, No. 2:10-CV-118-KS-MTP (S.D. Miss. Dec. 8, 2010), ECF No. 31.

13

claims against Jackson & Jackson ultimately stem from Calhoun's accident.

## C.     *"Insured Contract"*

Finally, Mid-Continent argues that it had no duty to defend Jackson & Jackson against the claims of Leaf River because the Master Agreement is not an "insured contract," as defined by the policy. Jackson & Jackson is obligated to pay Leaf River's damages because of the indemnification provision of the Master Agreement. Therefore, unless the indemnification provision is an "insured contract," Mid-Continent has no obligation to defend Jackson & Jackson against Leaf River's claims, pursuant to the "Contractual Liability" exclusion. An "insured contract" is:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf..

Mid-Continent argues that the indemnification provision only constitutes an "insured contract" if Calhoun's "bodily injury" was "caused, in whole or in part, by" Jackson & Jackson. Mid-Continent further argues that the Court must look only to Leaf River's claims against Jackson & Jackson to make this determination – in the same manner the Court determines whether a duty to defend exists. *See Lipscomb*, 75 So. 3d at 559 (court compares the policy to the complaint to determine whether the insurer has a duty to defend). Leaf River did not allege – in either its Third-Party Complaint against Jackson & Jackson in the *Calhoun* case or its Cross-Claim [27] against Jackson & Jackson in the present case – that Calhoun's injury was caused by Jackson & Jackson. Therefore, Mid-Continent argues that the indemnification

14

provision is not an "insured contract," and that it had no duty to defend Jackson & Jackson from Leaf River's claims.

In the Court's opinion, the policy's definition of an "insured contract" is not as clear as Mid-Continent argues. The operative phrase – "provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your behalf" – has two possible meanings. First, it could mean that an insured contract is one in which Jackson & Jackson agrees to indemnify another party for bodily injury to a third party caused by Jackson & Jackson. Alternatively, it could mean that an insured contract is one in which Jackson & Jackson agrees to indemnify another party for bodily injury to a third party, but only if the particular bodily injury at issue in the case was caused by Jackson & Jackson. In other words, the phrase is ambiguous because it could either describe the terms of the indemnity agreement or the particular injury at issue in any case to which the policy is applied. Accordingly, it must be interpreted in favor of Jackson & Jackson, the non-drafting party. *Corban*, 20 So. 3d at 609.

An "insured contract," therefore, is one in which Jackson & Jackson "assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person . . . caused, in whole or in part, by" Jackson & Jackson. In the Master Agreement, Jackson & Jackson agreed to indemnify Leaf River for all claims and liabilities arising from Jackson & Jackson's work that were not caused by Leaf River's negligence – a broad provision which encompasses liabilities "caused, in whole or in part, by" Jackson & Jackson. Accordingly, the indemnification provision of the Master

Agreement is an "insured contract" as defined by the policy, and the policy's contractual liability exclusion is inapplicable.[3]

**D.      *Mid-Continent Must Defend Jackson & Jackson***

For all the reasons stated above, the Court finds that Mid-Continent had and has a duty to defend Jackson & Jackson against Leaf River's claims in both the *Calhoun* case and the present case. Mid-Continent has had a duty to defend Jackson & Jackson in the present case since Leaf River first filed its Cross-Claim [27] against Jackson & Jackson on September 15, 2011. Mid-Continent's duty to defend Jackson & Jackson in the *Calhoun* case accrued by at least March 8, 2011 – the date on which Leaf River initiated the present case – but the Court has insufficient information to determine a specific date.

## VI. MID-CONTINENT'S DUTY TO INDEMNIFY JACKSON & JACKSON

Next, the Court will address Mid-Continent's duty to indemnify Jackson & Jackson for the damages awarded to Leaf River pursuant to the indemnification provision of the Master Agreement. This issue was addressed in the following motions: Mid-Continent's Cross-Motion for Partial Summary Judgment [62], and Jackson & Jackson's Motion for Partial Summary Judgment [109]. The parties' arguments with respect to this issue are essentially identical to their arguments on Mid-Continent's

---

[3]Mid-Continent cites *Red Ball Motor Freight, Inc. v. Emp'rs Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951), for the proposition that the phrase "caused, in whole or in part" triggers a requirement of proximate causation. That point is undisputed. The issue is whether the phrase "caused, in whole or in part" refers to the liability assumed under the indemnity agreement or to the actual injury at issue in the case to which the policy is applied.

duty to defend Jackson & Jackson.

The policy provides that Great American will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" caused by an "occurrence." However, the policy excludes from coverage any "bodily injury" for which Jackson & Jackson "is obligated to pay damages by reason of the assumption of liability in a contract." The exclusion does not apply, though, if the contract is an "insured contract" – one in which Jackson & Jackson "assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization . . . caused, in whole or in part, by" Jackson & Jackson. For the purposes of liability assumed in an "insured contract," "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the insured are deemed to be damages because of 'bodily injury.'"

As the Court held above, the indemnification provision of the Master Agreement constitutes an "insured contract," Leaf River's damages are "because of 'bodily injury,'" and the bodily injury at issue was caused by an "occurrence." Therefore, just as Mid-Continent has a duty to defend Jackson & Jackson from Leaf River's claims, it has a duty to indemnify Jackson & Jackson for the damages awarded to Leaf River.

## VII. MID-CONTINENT'S DUTY TO DEFEND/INDEMNIFY LEAF RIVER

The Court will now address Mid-Continent's duty to defend and indemnify Leaf River against the claims of Buddie Calhoun. This issue was addressed in the following motions: Jackson & Jackson's Motion for Partial Summary Judgment [87], Mid-Continent's Motion for Partial Summary Judgment [107], and Mid-Continent's Motion

for Partial Summary Judgment [108].

Section I of the policy provides that Mid-Continent will pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applies." It also provides that Mid-Continent will "have the right and duty to defend the insured against any 'suit' seeking those damages." The insurance applies to "bodily injury" and "property damage" caused by an "occurrence" during the policy period. An endorsement to the policy provides that Leaf River shall be included as an "insured," "but only with respect to liability directly attributable to [Jackson & Jackson's] performance of '[its] work' for [Leaf River]." The endorsement only applies, though, if Jackson & Jackson "agreed by written 'insured contract' to designate [Leaf River] as an additional insured . . . ."

Therefore, if Leaf River is an "insured," Mid-Continent's obligations to it are generally coequal with its obligations to Jackson & Jackson. However, Leaf River will only be considered an "insured" if 1) the liability for which it seeks coverage was "directly attributable" to Jackson & Jackson's performance of its work under the Master Agreement, and 2) Jackson & Jackson agreed in an "insured contract" to designate Leaf River as an additional insured.

## A.    *"Directly Attributable To"*

Mid-Continent first argues that Calhoun's claims did not expose Leaf River to liability that is "directly attributable to" Jackson & Jackson's performance under the Master Agreement. Calhoun alleged that he was injured by Leaf River's negligence

18

while acting within the scope of his employment with Jackson & Jackson.[4] The key issue here is how one construes the phrase "directly attributable to." Mid-Continent essentially argues that the phrase means "directly caused by," and that Leaf River is not an additional insured because Buddie Calhoun did not allege that Jackson & Jackson caused his injuries by its performance under the Master Agreement. Leaf River disagrees, arguing that "directly attributable to" simply means that Calhoun's injuries must arise from or be incident to Jackson & Jackson's work under the Master Agreement.

The Court finds that the phrase is ambiguous, and it must be interpreted in favor of Leaf River, the non-drafting party. *Corban*, 20 So. 3d at 609. In Mississippi, courts apply "the ordinary and popular meaning to any undefined terms" in insurance policies. *Id.* According to Calhoun's allegations, Leaf River's liability is "directly attributable to" Jackson & Jackson's work under the Master Agreement insofar as Calhoun was injured while performing Jackson & Jackson's work under the Master Agreement.

The Court's decision here is primarily driven by the simple manner in which Mid-Continent could have eliminated all ambiguity. If it truly intended to include Leaf River as an insured only with respect to liability *caused by* Jackson & Jackson during the performance of its work under the insured contract, it could have simply said so. Rather, it chose to include Leaf River as an insured with respect to liability *directly*

---

[4]*See* State Court Record, *Calhoun v. Leaf River Cellulose, LLC*, No. 2:10-CV-118-KS-MTP (S.D. Miss. May 18, 2010), ECF No. 2.

*attributable to* Jackson & Jackson's performance under the contract. The allegations

of Calhoun's complaint clearly demonstrate an injury *directly attributable to* his work

for Jackson & Jackson, according to the ordinary and popular meaning given to the

words, and Mid-Continent has not presented any binding authority to the contrary.[5]

**B.** **"Insured Contract"**

The additional insured endorsement only applies if Jackson & Jackson "agreed

by written 'insured contract' to designate" Leaf River as an additional insured. Jackson

& Jackson agreed in the Master Agreement to maintain a liability insurance policy

that protects Leaf River from all claims arising from Jackson & Jackson's work under

the Master Agreement, but Mid-Continent argues that the Master Agreement is not

an "insured contract." The Court has already addressed this issue.

**C.** **Mid-Continent Must Defend/Indemnify Leaf River**

In summary, an endorsement to the policy provides that Leaf River shall be

included as an "insured," "but only with respect to liability directly attributable to

---

[5]Mid-Continent cites *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d
487 (5th Cir. 2000). In that case, the Fifth Circuit addressed the phrase "arising out
of," rather than "directly attributable to." *Id.* at 498-500. Mid-Continent represents
that it changed the policy wording from "arising out of" to "directly attributable to"
in response to the *Swift* decision. Nothing in *Swift* leads the Court to believe,
though, that the Fifth Circuit – when applying Mississippi law – would interpret
the additional insured endorsement in the manner that Mid-Continent suggests.
    Mid-Continent also cites *Mid-Continent Cas. Co. v. Const. Servs. &
Consultants, Inc.*, No. 06-CV-80922, 2008 WL 896221 (S.D. Fla. Mar. 31, 2008), a
case in which the United States District Court for the Southern District of Florida
addressed the same policy language at issue in the present case and agreed with
Mid-Continent's position. The Court respectfully disagrees with the Southern
District of Florida's analysis of the operative policy language. In any case, the
decision is not binding authority on this Court.

[Jackson & Jackson's] performance of '[its] work' for [Leaf River]." The endorsement only applies if Jackson & Jackson "agreed by written 'insured contract' to designate [Leaf River] as an additional insured . . . ." Calhoun's injury was directly attributable to his work for Jackson & Jackson under the Master Agreement, and Jackson & Jackson agreed in the Master Agreement – an "insured contract" – to designate Leaf River as an additional insured. Therefore, Leaf River is an additional insured.

The policy provides that Mid-Continent will pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applies." It also provides that Mid-Continent will "have the right and duty to defend the insured against any 'suit' seeking those damages." Accordingly, the policy requires Mid-Continent to both defend and indemnify Leaf River against Calhoun's claims.

## VIII. CONCLUSION

For the reasons stated above, the Court finds that the policy requires Mid-Continent to both defend and indemnify Jackson & Jackson against the claims of Leaf River. The Court also finds that Mid-Continent must defend and indemnify Leaf River against the claims of Buddie Calhoun. Accordingly:

- The Court **grants** the Motion for Partial Summary Judgment [40] filed by Jackson & Jackson as to Mid-Continent's duty to defend it against Leaf River's claims.

- The Court **denies** the Cross-Motion for Partial Summary Judgment [62] filed by Mid-Continent as to Jackson & Jackson's claims against it.

- The Court **grants** the Motion for Partial Summary Judgment [109]

filed by Jackson & Jackson as to Mid-Continent's duty to indemnify it for the damages awarded to Leaf River in this matter.

- The Court **grants** the Motion for Partial Summary Judgment [87] filed by Jackson & Jackson as to Mid-Continent's duty to defend Leaf River in the *Calhoun* case.

- The Court **denies** the Cross-Motion for Partial Summary Judgment [107] filed by Mid-Continent as to its duty to defend Leaf River in the *Calhoun* case.

- The Court **denies** the Motion for Partial Summary Judgment [108] filed by Mid-Continent as to Leaf River's claims against it.

SO ORDERED AND ADJUDGED this 25th day of May, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE